| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA [X] EEOC | 460-2010-03524 |

**Texas Workforce Commission Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Brett J. Abernathy | (832) 236-3027 | [redacted] |

Street Address: 11635 Legend Manor Dr, Houston, TX 77082

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNISOURCE TX364 | 500 or More | (713) 744-5648 |

Street Address: 4414 Hollister Avenue, Houston, TX 77040

DISCRIMINATION BASED ON *(Check appropriate box(es).)*:
[ ] RACE [ ] COLOR [ ] SEX [X] RELIGION [ ] NATIONAL ORIGIN
[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 06-03-2010    Latest: 06-03-2010
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I have been with the Unisource for approximately 3 ½ years and I have been a good and loyal employee. I have also been awarded the Pinnacle award in 2009. Since David Rives was hired on or about May or June 2009, I have been subjected to a hostile work environment. Mr. Rives would yell, scream, change his internal rule on moving my accounts, made me report to the office for joint meetings where he was a no show and made inappropriate uncalled remarks about my religion. He would often say "Don't bring you bible for it will not help you, I was spending too much time on my belief instead of concentrating on my accounts, people lose their aggressiveness when have strong faith ie athletics and put a Baptist and a Catholic together on co call contest rather than split them and ruin two teams." I complained to Human Resources on March and in May 2010 about my concerns to no avail. I also mentioned to Human Resources about an exit strategy because I could no longer work under these circumstances. On June 3, 2010, I was laid off. I was told Respondent ranked employees by numbers and I was the only one selected for lay off in the Houston Branch.

I believe I was discriminated against because of my religion, Baptist in violation of Title VII of the Civil Rights Act of 1964, as amended and laid in retaliation for complaint of the unlawful employment practices I was being subjected to under the supervision of Mr. Rives. I believe Mr. Rives took great steps in preventing me from successfully succeeding in my job.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: Jul 27, 2010
Charging Party Signature: [signature]

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

[Notary seal: SHIRLEY ANN ALMAGUER, Notary Public, State of Texas, Commission Expires March 18, 2012]

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Brett J. Abernathy<br>11635 Legend Manor<br>Houston, TX 77082 | From: | Houston District Office<br>1919 Smith St, 7th Floor<br>Houston, TX 77002 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2010-03524 | Joel Lara,<br>Enforcement Supervisor | (713) 209-3380 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_R.J. Ruff, Jr.,_
District Director

9/30/10
(Date Mailed)

Enclosures(s)

cc: John Sills, CFO
UNISOURCE
WORLDWIDE, INC
6600 Governors Lake Pkwy
Norcross, GA 30071

TWC-Civil Rights Division
101 East 15th Street
Room T 144
Austin, Texas 78778-0001

Neera M. Skurky, Esq.
Seyfarth Shaw, LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309-7056

EEOC Document: Brett Abernathy

Overview: I worked for Unisource for 3 ½ years. I had 4 managers in that time. The year before my complaint I had won the Pinnacle award which is our Company's award for outstanding sales growth.

I had a new boss David Rives come in roughly a year ago and that is when problems started. I finally had to take my complaints to Human Resources. They did nothing for the most part. My complaint is based on religious discrimination that manifested itself with being treated differently. When I called Human Resources I told them there was a different set of rules for myself and a pronounced lack of support in growing my region. It took 3 email and several phone calls before they sent a "whitewashed" response back to me. In that time my treatment became much worse (retaliation) including one rage filled outburst from Rives that I thought was going to end in violence.

I will detail below. These actions led to a situation where I was forced to discuss an "exit strategy" right before Unisource laid me off. Religious belief and involvement was a problem. That problem also led to retaliation (when I complained to HR) as well as harassment and a offensive or hostile workplace as defined by the EEOC webpage. Lastly, the above forced me to announce an exit strategy to Unisource approximately a week and a half before I was laid off.

**Questionnaire number 4**

**If you checked color, religion or national origin, please specify:** Religion. I was known to be an active member of Second Baptist and a strong believer. The first time I spent a day in the field with Rives my beliefs were brought up by Rives while in my car after a full day of working together. It was the first of several times that Rives made discriminatory remarks about my faith.

***Other reasons (basis) for Discrimination (Explain)*** I was forced to finally go to human resources to officially complain about being treated differently. Among my complaints: having accounts moved from me, having new opportunities I was working moved to others, a lack of support in numerous large opportunities. Rives accused me of having another job (didn't), Rives told me I should look for another job. He made crass remarks about my daughter, Rives threatened to fire me in front of the sales team for no reason, I told HR that there was a different set of rules for me than others, I complained that I was made to "check in" every morning and evening as retaliation for questioning some of the above mentioned problems. I was not provided leads that I was promised. I was yelled at on occasion. *I also told HR that I knew for a fact that Rives had been in trouble at his last job for anger issues.* After initially going to Human resources Rives discriminated even more including admitting in front of an assistant that he was angry that I spoke to HR and would **never** answer another call from me again. Rives raged at me in one meeting (admin asst witnessed) to the point I thought there would be violence. When I told him I would return when he calmed down I was told if I left I would be fired. He

would not contact mfg's on several large opportunities that I tried to elicit his help as branch manager.

**Questionnaire number 5**

**What happened to you that you believe was discriminatory**

Date: roughly a year ago, after Rives came on board
Action: I drove with Rives to numerous accounts in Pasadena and Baytown. We were in the car headed back to the office. Rives mentioned that he had heard I was a member of Second Baptist and that I was really involved in my church. I mentioned that I had been recognized by the White House for community work. He asked if I also taught a class. I told him I actually directed a class. At that point he mentioned that he felt it took too much of my time. I mentioned that it didn't and that it was occasional evenings and some weekends. He said exactly and that I needed to focus less on God and more on sales. He mentioned that he knew of a lot of athletes that lost their aggressive edge when their focus was on their faith. I changed the subject because he obviously had a bias. I am not sure how he knew about me being involved in a class.

Person responsible: David Rives General Manager

**Date: February 17, 2010**

**What Happened:** Rives had planned for a contest. He paired all the sales reps up in teams. The contest was simple, to have a cold call blitz. Anyone who made a cold call and received a business card and know what they bought got credit for a call. There were 5 teams paired. Before the morning meeting to announce the day Rives put his head around my cubicle wall. This day also happened to be Ash Wednesday. Rives said to me at my cubicle that he put me with John Majeski for the day. He said that he thought rather than split up a catholic (John) and a Baptist and ruin 2 groups he would stick us together and see if he could get an hours work out of us.

Of note, when John and I got in the car I told him I had reasons to want to run hard all day and win the contest. We did, we had numerous more calls than the second place team. At the end of the day we had the most calls. He told the rest of the team members that we had made too many. We did the same exercise the next week. John and I were paired up again. We won once again. Rather than give us our due Rives changed the rules an awarded another team rather than give us credit. The whole team was witness to the end result.

Person Responsible: David Rives General Manager

**Date January 22nd**

**What Happened:** Rives received an e-mail from me. I had just received a large opportunity to quote a coffee customer that Rives had directed me to call on. Instead of

helping me, he told me he would give it to Joe a fellow salesperson. Joe had called on them once 6 months earlier and had not gotten anywhere. According to Rives rules this should have been mine to chase. This sort of thing had happened a lot to me. I appealed his decision several times by e-mail professionally (I have e-mails of this). He demanded that I come to his office immediately. When I got there he was furious and started screaming at me, he claimed that I didn't take personal responsibility and had anger issues. I asked him to give me 1 example of me losing my cool and he couldn't. I was not yelling at this time either. He told me his decision would stick. He sent an apology shortly after by e-mail (I have a copy).

A few hours later he sent me another e-mail stating that going forward I would have to attend a 7:30 meeting every morning and a 4:30 meeting every afternoon that he would attend. He followed that with a call to me on my cell stating that I needed to be prepared to discuss my activities every morning and afternoon with him personally and to not bother bringing my bible with me.

This was clearly a punishment for finally questioning him. When I told HR about this I also told them that for nearly a month I followed his rules and that aside from the first day and the next morning meeting Rives skipped EVERY SINGLE meeting although his e-mail to me stated that more than 1 skipped meeting would result in me being fired. I have this e-mail. This exercise was clearly intended to harass, provoke, and embarrass me for questioning his taking opportunities away from me.

Person Responsible David Rives General Manager

These are the big events. There are smaller side comments he would make concerning faith. I want to point out that although a church regular I never brought my faith into the workplace. His comments and thoughts were not even fair when considering my behaviour.

### 6. Why do you believe these actions were discriminatory

I was awarded with the Pinnacle award the year before. My prior boss and I still are friends to this day. I attended every meeting and had a good relationship with all of my co-workers. I was always respectful of Rives in meetings and around the office. Rives comments made it clear that he felt that my faith was a problem with my sales growth. The obstacle was Rives not supporting me in a number of accounts. These accounts were discussed with HR. His involvement in my territory and support with vendors was *markedly different* than what others received from him on a regular basis. What little support I did receive ended when I spoke to HR. His rage and total lack of support was pronounced.

### 7. What reasons were given to you for the acts you considered discriminatory.

HR didn't explain many of my complaints. They white washed the others. It took 3 e-mails to HR and several phone calls from me before they responded. It took 2 months

before they sent an answer back. I e-mailed numerous questions between the official complaint and when they returned with an answer. Not one of those questions were answered including when I asked them "what are my legal rights in this situation ". I have this e-mail.

Another HR note. We had monthly 1 on 1 pipeline reviews. After I complained our admin assistant was asked to sit in. I was in a pipeline review where Rives was acting very angry. I finally said "I want to take your suggestion and find another job". Rives started screaming at the top of his lungs and shaking all over. The admin asst told me later that she was VERY worried at the time and thought he was going to lose it.

Before the next pipeline review I called HR and told them what happened the time before. I told them that I thought there if the meeting went like the last one that there may be violence on Rives part. I told them that when he raged and I tried to leave the meeting until he calmed down that I was ordered to stay. I told them that I only wanted to do a pipeline over the phone. They told me that if I wasn't in the meeting I could be fired. I told HR that I wanted to discuss an exit strategy for me to leave the company. They said they could only take my 2 weeks notice. I went to the meeting the next morning and told Rives that I wanted to have an exit strategy and would continue to work my accounts but would look for work outside of the industry. Rives said he would support that. A week later I was laid off and told I couldn't receive unemployment or work in my chosen field.

By Whom: David Rives General Manager
Becky Javurek Human Resources
Margorie Rupp Human Resources

EEOC Houston District Office
Ms. Shirley Almaguer Federal Investigator
Charge Number: 460-2010-03524

Hello Shirley,

Thank you for the return call last week about my petition to sue Unisource. I do realize that they have responded back. I would like to know if that document is available for me to review. Also, here are a few bullet points to add to my reasons to sue above and beyond what I already have told you.

1. Unisource committed tortuous interference by asking at least 1 major vendor to not work with me in the greater Houston area and to assist in making sure I didn't succeed in packaging sales after Unisource had laid me off. His is a fact.

2. Unisource prevented me from success after I had complained to Human Resources. They treated me with extreme prejudice after my initial complaint and prevented me from succeeding on numerous levels. Remember, the year before I had won their Pinnacle award for outstanding sales achievement. I had to deal with screaming, threats of being fired, and being held to a different standard. I was put in at least one situation where I thought violence would break out and when I tried to leave I was told I would be terminated.

3. If they base their reasoning for letting me go on performance it needs to be known that:

a. My success was thwarted by Rives. No return phone calls, no work with days, and did not facilitate deviated pricing for major opportunities. These are basic job functions that he performed for others but not me.

 b. The whole Houston Branch suffered (many co-workers to a much greater degree than I). **Rives himself has since left the company.** The whole branch suffered in performance under Rives 1 year tender. The branch was recently in the mid 40 million range and is now in the twenty in per year sales. My lost business was small when compared to others.

4. It was brought to my attention yesterday by a co-worker that Rives had led many of our suppliers to believe that I had a second job while working for Unisource. He led our supplier base to believe I was on staff at Second Baptist. This is an absolute untruth. Unisource was my only source of income while I was employed there. This goes back to the relgion complaint and tarnishes my reputation within the Industry.

 There are other points I could bring up but I believe you have the major reasons to back-up my request to sue.

Thanks,

Brett Abernathy